IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MARCUS A. SATTERFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23CV144 |
| | ) | |
| ROXBORO POLICE OFFICER T.J. | ) | |
| KNAUB, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

When Roxboro Police Officer T.J. Knaub was speaking to Marcus A. Satterfield as part of an investigation into allegations of assault and trespassing, Satterfield admitted that he had a rock of crack cocaine that he was going to smoke and then opened his hand and showed Knaub several off-white rocks. Unsurprisingly, Knaub arrested Satterfield for felony possession of cocaine, then found drug paraphernalia on his person during a search incident to his arrest. Satterfield sued Knaub, in his official and individual capacities, alleging violations of his Fourth Amendment rights.

The Court previously dismissed the official capacity claim against Knaub. In turn, Knaub moves for summary judgment on the remaining individual capacity claim and supports the motion with his declaration, a copy of the investigative report, and a copy of his body worn camera footage in support. *See* Def. T.J. Knaub's Mot. for Summ. J., Docket Entry 52; Br. in Supp. of Def.'s Mot. for Summ. J., Docket Entry 54. Satterfield did not provide any evidence in opposition to the motion. *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J., Docket Entry 56.

The undisputed evidence shows that Knaub had probable cause to arrest Satterfield and the ensuing search incident to arrest was lawful. Accordingly, there is no genuine dispute of material fact – Knaub did not violate Satterfield's Fourth Amendment rights, and he is entitled to qualified immunity. For the reasons explained herein, the Court should grant Knaub's motion for summary judgment and dismiss this action.

## I. UNDISPUTED FACTS

On January 28, 2022, while working as a patrol officer with the City of Roxboro Police Department, T.J. Knaub was dispatched to a residence in response to a domestic violence call. *See* Decl. of Officer T.J. Knaub ¶ 3 (Dec. 4, 2025), Docket Entry 52-1. Satterfield's mother had called to report that he was fighting her husband and was high on drugs. *See id.* ¶ 4. As Knaub approached the home, he saw Satterfield lying in the middle of the road; Satterfield stood up when Knaub approached. *See id.* ¶ 6.

Knaub knew Satterfield from previous encounters where Satterfield had acted erratically and violently and seemed to be under the influence of alcohol or drugs. *See id.* ¶ 7. Knaub also knew that other officers had had similar encounters with Satterfield. *See id.*

Knaub asked "Marcus" to come talk and tell him what was going on. *See* Body Worn Camera Footage ("BWC") at 0:001:04–05, Ex. B to Decl. (manually filed with the Clerk's Office). The following exchange took place:

> Satterfield: I don't know if you know, I'm Jesus Christ. I'm fixin' to smoke me a rock. . . . I'm fixing to smoke me a rock. . . . I got a rock.
>
> Knaub: Where?
>
> Satterfield: I'm fixing to smoke it.
>
> Knaub: You have it now?
>
> Satterfield: Yeah.
>
> (Knaub asked to see it)
>
> Satterfield: I got it right here.

Satterfield then opened his left hand to reveal several off-white rocks.

*See* BWC at 0:01:16–36.

From Knaub's experience, the off-white rocks appeared to be crack cocaine. *See* Decl. ¶ 15. Based on Satterfield's statements and the appearance of the rocks, Knaub determined that he had probable cause to arrest Satterfield for felony possession of cocaine. *See id.* ¶ 16.

Satterfield began to wander away, but Knaub took hold of the fabric on the left sleeve of Satterfield's jacket and told Satterfield to "come here" and put the drugs down on the patrol car. *See* BWC at 0:01:36–40. Satterfield asked, "Why?" and Knaub told him, "You can't have that." *Id.* at 0:01:40–41.

Knaub placed Satterfield in handcuffs. *See id.* at 0:01:56–2:08. Knaub asked Satterfield to show him his right hand in which he held a pipe,

Brillo pad, and lighters. *See id.* at 0:02:18–20. From Knaub's experience, the glass pipe appeared to be the kind used to smoke crack cocaine, and he knew that the Brillo pad is frequently used to filter the crack smoke. *See* Decl. ¶ 20. Knaub then had Satterfield open his left hand which held the small off-white rocks he had shown Knaub earlier. *See* BWC at 0:02:27–3:01.

Knaub conducted a pat-down search of Satterfield before placing him in the backseat of the patrol car. *See id.* at 0:03:07–4:19. He then spoke to the stepfather and caller, returned to his car to place the contraband in the evidence bag, and transported Satterfield to the Person County Sheriff's Office in the Person County Law Enforcement Center. *See id.* at 0:04:20-12:37. During the transport, Knaub did not ask Satterfield any questions. *See id.* at 0:12:38-17:25. The Magistrate found probable cause for Satterfield's arrest, placed him under a secured bond, and turned him over to the custody of the Person County Detention Center. *See* Decl. ¶ 32.

## II. STANDARD OF REVIEW

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In analyzing a summary judgment motion, courts "must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." *Bandy v. City of Salem*, 59 F.4th 705, 709 (4th Cir. 2023).

The moving party bears the burden of establishing the absence of a genuine dispute of material fact by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Rule 56).

"Where, as here, the nonmoving party bears the ultimate burden of proof at trial, the moving party may discharge its initial burden at summary judgment by 'showing – that is, pointing out to the . . . court – that there is an absence of evidence to support the nonmoving party's case.'" *Anderson v. Diamondback Inv. Grp., LLC*, 117 F.4th 165, 174 (4th Cir. 2024) (quoting *Celotex Corp.*, 477 U.S. at 325). "If the moving party carries this initial burden, the burden then shifts to the nonmoving party, who must 'go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine

3

issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324).

"An affidavit or declaration used to support [summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (citing *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)).

A party cannot rely on statements in a brief to support a motion for summary judgment, because they are not evidence. *City of Greensboro v. Guilford Cnty. Bd. of Elections*, No. 15-CV-559, 2017 WL 11488724, at *1 n.4 (M.D.N.C. Jan. 26, 2017) (collecting cases); *see also Hill v. Carvana, LLC*, No. 22-CV-37, 2022 WL 1625020, at *3 (M.D.N.C. May 23, 2022).

There is no genuine dispute of material fact as to the constitutionality of Knaub's actions, and Satterfield, who has the burden at trial, has failed to provide any evidence to the contrary. Accordingly, the Court should grant Knaub's motion for summary judgment and find that he is entitled to qualified immunity.

## III. DISCUSSION

Title 42, United States Code, Section 1983 "is a federal statutory remedy available to those deprived of rights secured to them by the Constitution and, in a more sharply limited way, the statutory laws of the United States" by persons acting under color of state law. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). A plaintiff bringing suit pursuant to § 1983 must show that a person acting under color of state law violated a constitutional or other federal legal right. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Here, Satterfield contends that Knaub violated his Fourth Amendment right to be free from unreasonable search and seizure.

### A. Knaub had reasonable suspicion to stop Satterfield.

To the extent that Satterfield challenges Knaub's interaction with him in the first place, Knaub acted lawfully.

Officers may conduct a "brief investigatory stop" as long as there is "reasonable suspicion to believe that criminal activity may be afoot." *District of Columbia v. R.W.*, 608 U.S. ___, 146 S. Ct. 1069, 1070 (2026) (per curiam) (internal quotations omitted). "Reasonable suspicion 'is a less demanding standard than probable cause' yet requires 'at least a minimal level of objective justification for making the stop.'" *United States v. Critchfield*, 81 F.4th 390, 393 (4th Cir. 2023) (quoting *Illinois v. Wardlow*, 528 U.SS. 119, 123 (2000)). An "'officer must be able to articulate' objective reasons for his suspicion" that "the particular person stopped is,

4

or is about to be, 'engaged in a particular crime.'" *Id.* (quoting *Kansas v. Glover*, 589 U.S. 376, 385 n.1 (2020)).

"[R]easonable suspicion arises when, based on the totality of the circumstances, the detaining officer had a particularized and objective basis for suspecting criminal wrongdoing." *R.W.*, 126 S. Ct. at 1071 (internal quotations and citations omitted). Officers are permitted "to make commonsense judgments and inferences about human behavior" because "[r]easonable suspicion depends on the factual and practical considerations of everyday life on which *reasonable and prudent men*, not legal technicians, act." *Id.* (internal quotations and citations omitted) (emphasis in *R.W.*).

Here, the totality of circumstances leaves no question that there was reasonable suspicion to believe criminal activity was afoot when Knaub asked Satterfield to come talk to him.

Not only did Satterfield's *mother* call dispatch to report that *Satterfield* was at her house fighting with her husband and would not leave the property – the same location where Knaub came upon Satterfield, but Knaub knew Satterfield. And he knew him to act erratically and violently, often when he was under the influence of alcohol or drugs.

Knaub "drew the commonsense inference," *R.W.*, 146 S. Ct. at 1073,

that Satterfield had just committed assault and was trespassing. He then conducted a brief investigatory stop of Satterfield. Accordingly, because Knaub had articulable, reasonable suspicion that criminal activity was afoot, this stop was lawful.

B. There was probable cause to arrest Satterfield.

Satterfield also challenges his warrantless arrest, but the law permitted Knaub to arrest him under the circumstances.

An officer may arrest someone without a warrant "if the officer has probable cause to believe that the suspect committed a crime in the officer's presence." *District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018). Probable cause does not require "'an actual showing of'" criminal activity; it only requires "'a probability or substantial chance of criminal activity.'" *Id.* at 57 (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). It "'deals with probabilities and depends on the totality of the circumstances.'" *Id.* (quoting *Gates*, 462 U.S. at 243-44 n.13). It "'is not a high bar.'" *Id.* (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). To determine if there is probable cause to arrest someone, courts "'examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.'" *Id.* at 56-57 (quoting

5

*Maryland v. Pringle*, 540 U.S.366, 371 (2003)) (cleaned up).

The circumstances here far surpassed the standard for probable cause; there is no need for probability. After all, Satterfield *actually admitted* the crime to Knaub – "I'm fixing to smoke me a rock; I got a rock" – and Knaub *actually saw* Satterfield commit the crime – Satterfield showed Knaub off-white rocks in his hand, which Knaub identified, based on his experience in law enforcement, as crack cocaine. Therefore, Knaub had probable cause to arrest Satterfield – even without a warrant – for possession of cocaine.

### C. The search incident to arrest was lawful.

To the extent that Satterfield challenges Knaub's search of him incident to his arrest, Knaub once again acted lawfully.

Courts have long recognized that "a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." *United States v. Robinson*, 414 U.S. 218, 224 (1973). "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape" and "to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.'" *Id.* at 226 (quoting *Chimel v. California*, 395 U.S. 752,

762-63 (1969)); *see also Virginia v. Moore*, 553 U.S. 164, 178 (2008) ("When officers have probable cause to believe that a person has committed a crime in their presence, the Fourth Amendment permits them to make an arrest, and to search the suspect in order to safeguard evidence and ensure their own safety.").

Because Knaub's arrest of Satterfield was lawful, his subsequent search of Satterfield incident to that arrest was also lawful. *See, e.g.*, *Petrisor v. Rodgers*, No. 1:23CV552, 2025 WL 461631, at *12-13 (M.D.N.C. Feb. 11, 2025) (finding the defendant failed to state a claim for an unreasonable search where the search of his person was incident to his lawful arrest).

### D. Knaub is entitled to qualified immunity.

Knaub also argues that qualified immunity protects him from suit in his individual capacity. He is correct.

"The doctrine of qualified immunity 'balances two important interests,' namely, the need to hold accountable public officials who exercise power irresponsibly, and the need to shield officials who perform their duties responsibly from 'harassment, distraction, and liability.'" *Byers v. Painter*, 173 F.4th 155, 160 (4th Cir. 2026) (quoting *Peason v. Callahan*, 555 U.S. 223, 231 (2009)). To determine if qualified immunity protects an offer, the court asks two questions: "(1) whether a statutory or constitutional violation occurred, and

(2) whether the right was clearly established at the time of the violation." *Harrold v. Hagen*, 174 F.4th 393, 401-02 (4th Cir. 2026). "If the answer on either question is 'no,' the officer being sued is entitled to qualified immunity." *Id.* at 402.

Here, the analysis is straightforward. There was no constitutional violation.

Thus, Knaub is entitled to qualified immunity.

IV. CONCLUSION

**IT IS HEREBY RECOMMENDED** that the Court **GRANT** T.J. Knaub's Motion for Summary Judgment and dismiss the case with prejudice.

JoAnna Gibson McFadden
United States Magistrate Judge

August 7, 2026

7